| Minute Order Form (06/97) | | | |
|---|---|---|---|
| *See* **United States District Court, Northern District of Illinois** | | | |
| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
| CASE NUMBER | 02 C 5260 | DATE | 10/17/2002 |
| CASE TITLE | United Financial vs. Bayshores | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. This Court hereby orders this case transferred *sua sponte* to the Central District of California pursuant to 28 U.S.C. §1406(a). The motions of defendants Bayshores Funding Corporation, Russell Kuhlmann, Christian Kim, Shelly Yi and William Kaddis to dismiss the case for lack of personal jurisdiction or to transfer the case to California under 28 U.S.C. §1404(a) are hereby denied as moot. Status hearing set for 11/13/02 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | OCT 1 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 22 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/17/2002 | |
| | | | date mailed notice | |
| TH | courtroom deputy's initials | | TH | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED FINANCIAL MORTGAGE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | No. 02 C 5260 |
| | ) | |
| v. | ) | Honorable Amy J. St. Eve |
| | ) | |
| BAYSHORES FUNDING CORPORATION, | ) | |
| WILLIAM KADDIS, individually and | ) | |
| d/b/a WM. KADDIS REALTY, RUSSELL | ) | |
| KUHLMAN, CHRISTINA KIM, SHELLY YI | ) | |
| a/k/a SHELLY YI SEO or SHELLY S. SEO, | ) | |
| PATRIZIA LANZAFAME, and PHILLIP SAINT | ) | |
| ANDREW, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
OCT 1 8 2002

## MEMORANDUM OPINION AND ORDER

Defendants Bayshores Funding Corporation, Russell Kuhlmann[1], Christina Kim and Shelly Yi (the "Removing Defendants") have moved to dismiss this case for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), or to transfer the case to California under 28 U.S.C. § 1404.[2] Because the Court finds that the Removing Defendants' argument that this Court lacks personal jurisdiction over them has merit, in the interests of justice, the Court *sua sponte* transfers venue of this case pursuant to 28 U.S.C. § 1406, to the Central District of

---

[1] Defendant Kuhlmann has corrected the spelling of his name in his declaration. We will continue to use Plaintiff's spelling of Kuhlmann's name in the caption, but will use the correct spelling in the text of this opinion.

[2] Defendant William Kaddis has joined the motion. He, however, presented no independent facts regarding personal jurisdiction or the reasons for transfer. Because this Court has decided to transfer the case pursuant to 28 U.S.C. § 1406, Kaddis' motion is dismissed as moot.

1



California, where that court will have personal jurisdiction and venue over all the parties to the action.

## BACKGROUND

Plaintiff United Financial Mortgage Corporation ("United Financial") is an Illinois Mortgage Banker, with its principal place of business located at 600 Enterprise Drive, Suite 206, Oak Brook, Illinois. (R. 1-1, Compl. ¶ 2.) United Financial is a national mortgage banker primarily engaged in the origination and funding of mortgage loans. (*Id.*) United Financial has a sales office located in Irvine, California. (R. 15-1, Kuhlmann Decl. ¶ 3.) United Financial initially filed this case in Illinois State Court, seeking damages arising from an alleged mortgage fraud scheme whereby the Defendants fraudulently induced United Financial to fund mortgage loans of approximately $1.3 million. (R. 1-1, Compl.) Plaintiff alleges common law fraud, civil conspiracy, fraud based upon culpable ignorance and reckless disregard, fraud, negligence and breach of contract. (*Id.*) Defendants Bayshores, Kuhlmann, Kim and Yi removed it to this Court as a diversity action. (R. 1-1, Pet. for Removal.)

Defendant Bayshores Funding Corporation ("Bayshores") is a California Corporation with its principal place of business in Newport Beach, California. (R. 1-1, Compl. ¶ 6). Bayshores is a licensed broker engaged in the business of originating residential mortgage loans. (*Id.*) Bayshores does not have any offices, employees, bank accounts, or property in Illinois. (R. 15-1, Kuhlmann Decl. ¶ 11.) It does not hold meetings in the state. (*Id.*)

Defendant Russell Kuhlmann is a California citizen residing and working in Newport Beach, California. (*Id.* ¶ 1.) Kuhlmann is the President of Bayshores. (R. 1-1, Compl. ¶ 7.) Kuhlmann has not had any contacts with Plaintiff's employees located in Illinois. (R. 15-1,

Kuhlmann Decl. ¶ 10.) Furthermore, he has not traveled to Illinois in connection with any of the transactions at issue in this case. (*Id.*)

Defendant Christina Kim also works for Bayshores as a mortgage loan processor. (R. 12-1, Kim Decl. ¶ 2.) Kim communicated only with plaintiff's Irvine, California office in connection with the transactions at issue in this case. (*Id.* ¶ 9.) She did not talk to anyone in the plaintiff's Illinois office and did not travel to Illinois in connection with any of the mortgages at issue. (*Id.* ¶ 11.)

Defendant Shelly Yi is a licensed real estate broker who resided and worked in Glendale, California. (R. 1-1, Compl. ¶ 8.) Yi did not have any direct contacts with plaintiff. (R. 11-1, Yi Decl. ¶ 5.) Moreover, Yi did not travel to Illinois in connection with the transactions at issue. (*Id.* ¶ 5.) The Complaint alleges that Yi received $57,000 in proceeds from one of the loans at issue which was authorized by plaintiff's Oak Brook, Illinois office. (R. 1-1, Compl. ¶ 8.)

Defendant William Kaddis is a licensed real estate broker doing business as William Kaddis Realty. (*Id.* ¶ 5.) Kaddis worked in Los Angeles, California. (*Id.*) Kaddis served as defendant Patrizia Lazafame's real estate agent in the purchase of certain property located on Lamar Road in Los Angeles, California. (*Id.*) The Complaint further alleges that Kaddis served as defendant Saint Andrew's broker in the purchase of property located on Plymouth Boulevard in Los Angeles, California. (*Id.*)

I.   **The Wholesale Agreement**

On approximately June 7, 2000, defendant Bayshores entered into a Wholesale Agreement with United Financial. (R. 1-1, Compl. ¶ 12.) The Wholesale Agreement specifically noted that Bayshores entered it with United Financial, "with offices at 600 Enterprise Drive,

3

Suite #206, Oak Brook, IL 60523." (*Id.*, Ex. A at 1.) The Wholesale Agreement also provided that "any unresolved dispute between the parties arising out of, in connection with the terms of this Agreement shall be adjudicated by arbitration in the City of Oak Brook, Illinois . . . ." (*Id.* ¶ 13.) Bayshores executed the Wholesale Agreement in California and forwarded it to plaintiff's Irvine, California office. (R. 15-1, Kuhlmann Decl. ¶¶ 4-5.) Kuhlmann, United Financial's president, executed the Wholesale Agreement in Oak Brook, Illinois. (R. 1-1, Compl., Ex. A at 6.)

## II. The Real Estate Transactions

The Complaint contains allegations of fraud involving the sale of two properties: 1) 2668 Lamar Road, Los Angeles, California (the "Lamar Road Property"); 2) 1101 South Plymouth Boulevard, Los Angeles, California (the Plymouth Boulevard Property). Both of these properties are located in California, and all of the Defendants were located in California.

### A. The Lamar Road Property

Plaintiff contends that in April and May of 2001 Defendants Kaddis, Yi, Kim, Kuhlmann and Bayshores conspired to enter a fraudulent transaction with defendant Lanzafame for the purchase of the Lamar Road Property. (R. 1-1, Compl. ¶¶ 17-30, 49-55.) Yi allegedly sent Lanzafame to Bayshores, Kim and/or Kuhlmann to assist in the preparation of the false loan documentation, and Yi allegedly profited from the sale of the Lamar Road Property. (*Id.* ¶¶ 8, 19.) Plaintiff alleges that Bayshores, Kaddis, Lanzafame, Yi, Kim and Kuhlmann prepared false loan documents in connection with the sale of the Lamar Road Property. (*Id.* ¶ 21.) Those false documents, according to United Financial, caused them to issue two loans to Lanzafame for the purchase of the property. (*Id.* ¶ 25.) These loans totaled $980,000. (*Id.* ¶ 27.)

4

As the affidavits submitted by the Removing Defendants show, Bayshores, Kim, Yi and Kuhlmann did not have any direct dealings with Illinois in connection with this transaction. They dealt instead with Plaintiff's Irvine, California office. Specifically, they submitted paperwork to the Irvine, California Office and communicated with Plaintiff's employees in that office. The Lamar Road Property is located in California, and the paperwork was prepared in California. United Financial authorized and initiated the wire transfers in connection with the loans from Oak Brook, Illinois. The promissory notes signed by Lanzafame provided for all monthly payments to be made to United Financial in Oak Brook, Illinois.

### B. The Plymouth Boulevard Property

The Complaint further alleges that in April and May 2001, Defendants Kaddis, Bayshores, Kim and/or Kuhlmann assisted Saint Andrew in preparing false loan documentation. (R. 1-1, Compl. ¶¶ 31-43.) Such documentation, according to Plaintiff, was submitted to Plaintiff in connection with the purchase of the Plymouth Boulevard Property. (*Id.*) Defendant Kaddis directed Saint Andrew to Bayshores to assist in the preparation of the fraudulent documentation. (*Id.* ¶ 32.) Bayshores then submitted the documentation to United Financial, who issued two loans to Saint Andrew totaling $350,000. (*Id.* ¶¶ 32, 39.)

In connection with the Plymouth Boulevard Property loans issued by United Financial, Bayshores, Kim and Kuhlmann prepared the paperwork in California and submitted the loan paperwork to United Financial's Irvine, California office. (R. 12-1, Kim Decl. ¶¶ 7-8.) Defendants Bayshores, Kim and Kuhlmann only dealt with Plaintiff's employees in the Irvine, California sales representative office. (R. 12-1, Kim Decl. ¶¶ 8-9.) United Financial authorized and initiated the wire transfers in connection with the loans from Oak Brook, Illinois. (R. 17-1,

5

Pl.'s Resp. in Opp'n to Mot. to Dismiss or Transfer, Ex. 1, Khoshabe Decl. ¶¶ 4-5.) The promissory notes signed by Lanzafame provided for all monthly payments to be made to United Financial in Oak Brook, Illinois. (*Id.*, Ex. 3, Lanzafame Note ¶ 3.)

United Financial sold the loans in connection with these transactions on the secondary mortgage market to DLJ Mortgage Capital, Inc. ("DLJ"). (R. 1-1, Compl. ¶¶ 29, 42.) DLJ subsequently demanded that United Financial repurchase these loans because they were in early default. (*Id.* ¶ 44.) United Financial, per its contractual obligation, repurchased all of the defaulted loans from DLJ. (*Id.* ¶ 45.)

## ANALYSIS

Defendants seek to have the case dismissed for lack of personal jurisdiction. In the alternative, they request that the Court transfer the case to California.

### I.  Legal Standard

When a defendant files a motion to dismiss a case for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of personal jurisdiction over the defendants. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). In assessing such a motion, the allegations in the Complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in the Plaintiff's favor. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

An Illinois federal court has personal jurisdiction over a non-resident party "only if an Illinois state court could have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th

Cir.1995). The Illinois long-arm statute[3] permits the Court to exercise personal jurisdiction over a party to the extent allowed under federal due process. *See* 735 Ill. Comp. Stat. 5/2-209(c); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992). In addition, the due process guarantees of the Illinois Constitution also must be satisfied before personal jurisdiction may be asserted over an out-of-state defendant. *RAR*, 107 F.3d at 1276; *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F.Supp.2d 818, 821 (N.D. Ill.1999). "If jurisdiction is improper under either the United States or Illinois Constitution, the court cannot exercise jurisdiction over the defendant." *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821 (N.D. Ill. 1999). Because the Seventh Circuit has held that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," the Court will address a single due process inquiry. *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR*, 107 F.3d at 1276; *Klump*, 71 F.3d at 1371 n.4). *See also Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).

The Due Process Clause of the Fourteenth Amendment restricts personal jurisdiction over non-resident defendants. *RAR*, 107 F.3d at 1277. In order for a court to exercise personal

---

[3] The Illinois long-arm statute states, in pertinent part:

> [a]ny person, whether or not a citizen or resident of this State, who in person or through an agent does any of the act hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the following such acts: (1) The transaction of any business within this State; [or] (2) The commission of a tortious act within this State . . . .

735 ILCS 5/2-209(a). The statute further provides that "a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c)

jurisdiction over a non-resident defendant, due process requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *RAR*, 107 F.3d at 1277 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum contacts standard varies depending on whether the plaintiff asserts general or specific jurisdiction. Because this case involves specific jurisdiction[4], the Court will address that standard.

Specific jurisdiction originates in cases "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This nexus "aims to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Hyatt*, 302 F.3d at 716 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In specific jurisdiction cases, a defendant's minimum contacts with Illinois must "result from the actions by the defendant himself that create a

---

[4] A defendant is subject to general jurisdiction in Illinois only when it is either domiciled in Illinois, *see Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D. Ill. 2000), or "where the defendant has 'continuous and systematic general business contacts with the forum.'" *RAR, Inc.*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)) (internal quotations omitted). Although United Financial does not specify if it is seeking general or specific jurisdiction, it makes a broad allegation that, under the Wholesale Agreement, "over 40 loans were funded by United Financial through its Oak Brook office over a lengthy period of time." (R. 17-1, Pl.'s Resp. in Opp'n to Mot. to Dismiss or Transfer at 10). Plaintiff does not develop this argument, nor does Plaintiff explain how the origin of United Financial's funding would allow for general jurisdiction over the Removing Defendants. Thus, this argument is waived. *Commodity Futures Trading Comm'n v. Tokheim*, 153 F.3d 474, 476 n.3 (7th Cir. 1998). In any event, given the facts surrounding these loans, Plaintiff has not established that the Defendants had "continuous and systematic general business contacts with the forum."

'substantial connection' with the forum state." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). The defendant's connection to the State must be substantial enough that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. Furthermore, contacts with Illinois that are "random," "fortuitous" or "attenuated" will not satisfy the due process mandates. *Burger King*, 471 U.S. at 475; *Heritage House Rests. v. Continental Funding Group*, 906 F.2d 276, 283 (7th Cir. 1990).

## II. The Defendants' Contacts With Illinois

### A. Bayshores and Its Employees, Kuhlmann and Kim

Plaintiff claims that the Removing Defendants had sufficient contacts with Illinois to satisfy the due process requirements of the Constitution based on the following: the terms and conditions of the Wholesale Agreement, including a provision which provided for arbitration resolution in Oak Brook, Illinois; the fact that the Wholesale Agreement was signed on behalf of United Financial in Oak Brook, Illinois; their dealings with United Financial, which has a corporate headquarters and principle place of business in Oak Brook, Illinois; the number of mortgages brokered by Bayshores with United Financial; the authorization of wire transfer from Oak Brook, Illinois; and its contention that Defendants sought out United Financial for the transactions at issue.

Plaintiff first argues that personal jurisdiction is conferred through the contract entitled Wholesale Agreement. In contract disputes it is only the "'dealings *between the parties in regard to the disputed contract*' that are relevant to minimum contact analysis." *RAR*, 107 F.3d at 1278 (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3rd. Cir.1996)) (emphasis in original). It is clear that "an out-of-state party's contract

with an in-state party is alone not enough to establish the requisite minimum contacts." *Id.* at 1277 (citing *Burger King*, 471 U.S. at 474-75). The Court will then look to "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing'[which] may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt*, 302 F.3d at 716. Here, all Removing Defendants actions relating to the contract took place in California and not in Illinois.

The Wholesale Agreement's arbitration clause sets forth an Illinois forum for arbitration. That clause specifically provided that any dispute would be arbitrated in the City of Oak Brook, Illinois. It is well-settled that parties may consent either implicitly or explicitly in advance to submit their controversies to a particular forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir.1989); *Hanson Eng'rs v. UNECO, Inc.*, 64 F.Supp.2d 797, 800 (N.D. Ill 1999). Consent to suit in a particular forum is an independent ground for the exercise of personal jurisdiction, separate and distinct from any personal jurisdiction based on an analysis of minimum contacts. *See Burger King*, 471 U.S. at 473 n. 14, 105 S.Ct. 2174. Plaintiff argues that the arbitration clause alone is enough to confer personal jurisdiction over the Removing Defendants.

In this instance, however, the forum selection clause is not enough. The clause only pertains to the arbitration of disputes between Bayshores and United Financial; it does not address a forum for litigation. The Plaintiff does not cite to any case where a court held that the defendant had consented to jurisdiction to litigate in a particular forum based solely on the parties' agreement to arbitrate in that forum. The Seventh Circuit has not confronted the issue,

but other federal courts have found that a clause stating the forum for arbitration does not alone confer personal jurisdiction. *See BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261-62 (3rd Cir. 2000) (agreement to arbitrate in forum "offers most substantial support" for personal jurisdiction, but was "not sufficient to carry the day."); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F.Supp. 1131, 1138-39 (S.D.N.Y. 1997) (arbitration clause alone did not give court jurisdiction); *cf. CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366-67 (2nd Cir. 1986) (forum clause in arbitration agreement was irrelevant when the cause of action being sued upon was not itself arbitrable). Those courts holding that personal jurisdiction existed found more contacts existed than just the agreement to arbitrate in that state. *See, e.g., Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F.3d 888, 893-895 (9th Cir. 1996) (actual arbitration in state, preceded by agreement to arbitrate in that state was enough to confer jurisdiction).

The Wholesale Agreement clearly provides for arbitration of disputes in Oak Brook, Illinois. Plaintiff elected not to compel arbitration in this case, however, thus they cannot rely on the clause to bring suit against the Removing Defendants in Illinois. The Wholesale Agreement did not provide for the "future consequence" of litigation in Illinois, even though the plaintiff could have included a forum selection clause for litigation in the Wholesale Agreement, but they did not do so. The arbitration clause alone is not enough to satisfy the minimum contacts requirement of the due process clause.

Plaintiff next attempts to show sufficient contacts through Bayshores allegedly seeking out United Financial to finance the loans for the transactions at issue in this case. It is clear that "whether the defendant solicited the transaction in question within the proposed forum" is a relevant fact in assessing minimum contacts. *Federated Rural Elec. Ins. Corp. v. Inland Power*

& *Light Co.*, 18 F.3d 389, 394 (7th Cir.1994). In this case, however, Bayshores solicited United Financial in Irvine, California, not in the Northern District of Illinois. Bayshores never contacted the Oak Brook, Illinois office. Its initiation of the business in California does not make its being sued in Illinois reasonably foreseeable. Accordingly, this factor does not satisfy the due process requirements of the Fourteenth Amendment.[5]

Plaintiff also points to the fact that United Financial's President, Joseph Khoshabe, signed the Wholesale Agreement in Illinois. It claims that through this signature, the contract was created in Illinois. The order of events shows that Bayshores initially signed the contract in California, then forwarded it to United Financial's office in Irvine, California. In turn, the Irvine office sent it to Oak Brook, Illinois for signature. While plaintiff correctly states that Mr. Khoshabe's signature on the Wholesale Agreement in Oak Brook, Illinois actually created the contract because it was the last chronological act, *Gordon v. Tow*, 498 N.E.2d 718, 722-23 (Ill. App. Ct. 1986), "this factor alone is simply not enough to tilt the balance in favor of asserting personal jurisdiction." *Heller Fin. v. Ohio Sav. Bank*, 158 F.Supp.2d 825, 829 (N.D. Ill. 2001). This is especially true here where there is no evidence that Bayshores knew the contract would be finalized in Illinois.

Plaintiff further claims that jurisdiction is appropriate because its Illinois financial office

---

[5] The Removing Defendants' reliance on *Phoenix Airway Inn Assocs. v. Essex Financial Services, Inc.*, 1989 U.S. Dist. LEXIS 14361 (N.D. Ill. 1989) and *Pathway Financial v. Heaton*, 1989 U.S. Dist LEXIS 4600 (N.D. Ill. 1989) is not instructive in this case because both *Phoenix* and *Pathway* involved an analysis of the Illinois long-arm statute *before* the 1989 amendment which greatly expanded the reach of the statute. Specifically, the amendment to the statute provides for jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. § 5/2-209(c). This broad inquiry was not undertaken in *Phoenix* or *Pathway*, thus they are not instructive.

had to authorize or initiate the wire transfers for the loans at issue in the case. These wire transfers from the plaintiff to California were not enough to establish minimum contacts. *See Asset Alloc. & Mgmt. Co. v. Western Empl. Ins. Co.*, 892 F.2d 566, 569-70 (7th Cir. 1989) (payment of checks insufficient for minimum contacts); *Tri-Meats, Inc. v. NASL Corp.*, 2001 WL 292621, at *7 (N.D. Ill. Mar. 26, 2001) (wire transfer to Illinois "not enough" to satisfy jurisdiction); *FCNBD Mortgage Invs., Inc., v. CRL, Inc.*, No. 00 C 405, 2000 WL 1100332, at *4 (N.D. Ill. Aug. 4, 2000) (wire transfer to Chicago insufficient to establish personal jurisdiction).

Even when looking as these contacts as a whole, plaintiff has not established sufficient minimum contacts to assert personal jurisdiction over Bayshores or its employees Kim and Kuhlmann. These contacts are fortuitous and do not demonstrate that the Removing Defendants "purposefully established minimum contacts within" Illinois." *Burger King*, 471 U.S. at 476.

### B.     Defendant Yi

Defendant also asserts personal jurisdiction over Shelly Yi based on a $57,000 wire transfer rom the Lanzafame transaction that she received from a United Financial account in Illinois. Yi contends in her affidavit that she mistakenly received the money and that she returned it to the seller of the property.

It is uncontested that Yi was not a party to the Wholesale Agreement, did not have a separate contract with United Financial, never traveled to Illinois in connection with the transactions at issue and never had any conversations with anyone at United Financial. Taking the allegations in the light most favorable to United Financial, the mere receipt of a wire transfer from an Illinois account is not sufficient to establish personal jurisdiction over Yi. *See Asset*

13

*Alloc. & Mgmt*, 892 F.2d at 569-70; *Tri-Meats, Inc.*, 2001 WL 292621, at *7. She did not have any other contacts with Illinois. This receipt, even if it was not a mistake, did not put her on notice that she could be haled in a court in Illinois. Accordingly, this court does not have personal jurisdiction over Yi.

### C. Fiduciary Shield Doctrine

Defendants Kim and Kuhlmann, both citizens of California, also argue that the Court does not have personal jurisdiction over them under the "fiduciary shield doctrine." That doctrine precludes courts in Illinois from exercising jurisdiction over a non-resident corporate official when the only contacts that individual has with Illinois are made in his or her corporate capacity. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994) ("This doctrine ... denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal.") (internal citations omitted)), *cert. denied*, 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855 (1995). As the Illinois Supreme Court has noted, where an individual defendant's conduct in Illinois "was a product of, and was motivated by, his employment situation and not his personal interests, . . . it would be unfair to use this conduct to assert personal jurisdiction over him as an individual." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990).

The fiduciary shield doctrine, however, is discretionary or "equitable," rather than an absolute entitlement. *Burnhope v. National Mortgage Equity Corp.*, 567 N.E.2d 356, 363-64 (Ill. App. Ct. 1990). Moreover, courts have held that it does not apply to "an individual who is a high-ranking company officer or shareholder [who] has a direct financial stake in the company's health." *See R-Five, Inc. v. Sun Tui, Ltd.*, No. 94 C 4100, 1995 WL 548633, at * 5 (N.D. Ill.

14

Sept. 12, 1995) (personal jurisdiction existed where defendant was "president, board member, and (most importantly) shareholder of corporation" and "was not merely obeying the orders of his superiors."). "The determinative factor is the individual's status as a shareholder, not merely as an officer or director." *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F.Supp.2d 1143, 1147 (N.D. Ill. 2001). There is no allegation that either Kim or Kuhlmann was a shareholder or had a direct financial stake in the company.

Here, Bayshores employed Kim as a mortgage loan processor. Every contact Kim had with United Financial was made in her corporate capacity. Kim processed the loan applications for the four loans in question. She then took the papers to her supervisor, Kuhlmann, for his review and signature. There is no allegation that she stood to profit from the alleged wrongdoing. Furthermore, she did not have any direct contact with Illinois. Accordingly, even if the plaintiff had established minimum contacts over Kim, the fiduciary shield doctrine would protect her from personal jurisdiction in Illinois.

Similarly, Kuhlmann's indirect dealings on the loans in question took place in his corporate capacity as President of Bayshores. He signed the loan applications. Plaintiff has not alleged that he stood to profit from the alleged mortgage fraud scheme or that he had a direct financial stake in Bayshores. Accordingly, the fiduciary shield doctrine prevents this Court from exercising personal jurisdiction over him.

### III. Motion to Transfer Venue

In the alternative of dismissing the case, the Removing Defendants request that the Court transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a). In order to transfer a case under § 1404(a), the Court must first have proper venue. *See TruServ Corp. v.*

15

*Neff*, 6 F.Supp.2d 790, 793 (N.D. Ill. 1998) (venue must be proper in both transferor and transferee court to transfer pursuant to § 1404(a)). Under 28 U.S.C. § 1391, however, venue is not proper here. The case was removed to this Court based upon a diversity of citizenship. Section 1391 provides in relevant part that:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all the defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). For purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). The Court must concluded that venue is not proper here. Section 1391(a)(1) is not applicable because no defendant resides in Illinois. As can be seen by the Court's personal jurisdiction analysis, the overwhelming majority of the events did not occur in Illinois, so § 1391(a)(2) does not provide for proper venue. Finally, the action may be brought in the Central District of California, so § 1391(a)(3) is not applicable. Because venue is not proper in the Northern District of Illinois, the Court cannot transfer the case under § 1404(a).

The Court will, however, transfer this case pursuant to 28 U.S.C. § 1406, which governs the dismissal or transfer of cases where venue is improper. It is appropriate for this Court to consider a transfer under this section *sua sponte*. *See, e.g., Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F.Supp.2d 918, 928 (N.D. Ill. 2002). This Court may, "if it be in the

interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). It is undisputed that venue would be proper in the transferee district. The alleged wrongdoing occurred in that forum and the property and defendants are located there. Further, it is clear from the pleadings that the Central District of California will have jurisdiction over all of the parties.

Transfer to the Central District of California under § 1406 is also in the interest of justice. It is presumed that a transfer is in the interest of justice. *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F.Supp.2d 1052, 1059-60 (N.D. Ill. 2002). Here, there is no reason to hold otherwise. There is no allegation by the Removing Defendants that Plaintiff was merely forum shopping and attempting to win the race to the courthouse by filing in an improper forum. It appears that United Financial filed the lawsuit in the Northern District of Illinois in good faith. No purpose would be served by requiring United Financial to start suit anew or even to simply refile its complaint in the Central District of California.

## CONCLUSION

This Court does not have personal jurisdiction over the Removing Defendants. Instead of dismissing the action, the Court will transfer the action to the Central District of California pursuant to 28 U.S.C. § 1406. The motions by the Removing Defendants and Kaddis to dismiss for lack of personal jurisdiction or in the alternative to transfer pursuant to § 1404(a) are therefore denied as moot.

Date: October 17, 2002

_____
AMY J. ST. EVE
U.S. District Court Judge